IN THE UNITED STATES DISTRICT COURT FOR
THE WESTERN DISTRICT OF OKLAHOMA

JUSTIN MORRIS, as administrator for )
the Estate of George Morris, )
 )
             Plaintiff, )
 )
vs. )   No. CIV-14-497-W
 )
KEITH L. HUMPHREY, in his official )
and individual capacities as Chief of )
Norman Police Department, et al., )
 )
             Defendants. )

## ORDER

This matter comes before the Court on the Motion to Dismiss filed pursuant to Rule 12(b)(6), F.R.Civ.P., by defendants Larry Shelton, Aaron Lancaster and Jonathon Hicks. Plaintiff Justin Morris, as administrator for the Estate of George Morris, has responded. Based upon the record, the Court makes its determination.[1]

In Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), the United States Supreme Court set forth the standards that this Court must use in determining whether dismissal, as these defendants have requested, is warranted under Rule 12(b)(6). The Supreme Court held in accordance with Rule 8, F.R.Civ.P., that a complaint need not contain "heightened fact pleading of specifics," 550 U.S. at 570, or "detailed factual allegations," id. at 555 (citations omitted), but it must contain "enough facts to state a claim to relief that is plausible on its face." Id. at 570.[2]

---

[1]The Court has disregarded the defendants' reply [Doc. 27] because it was untimely filed. See Rule 7.1(I), F.R.Civ.P.

[2]Even though Morris quoted from the police reports in his Complaint, the Court, for purposes of resolving the instant motion, has not considered any other statements in these

The United States Court of Appeals for the Tenth Circuit has stated that Twombly imposes a "burden . . . on the plaintiff to frame a 'complaint with enough factual matter (taken as true) to suggest' that he . . . is entitled to relief." Robbins v. Oklahoma, 519 F.3d 1242, 1247 (10th Cir. 2008)(quoting Twombly, 550 U.S. at 556). The allegations in Morris' removed state court petition (hereafter "Complaint") must therefore "be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief [against Shelton, Lancaster and Hicks]." Id. (footnote omitted).

The Court's task at this stage is to determine whether "there are well-pleaded factual allegations," Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009), in the challenged pleading, and if so, the "[C]ourt should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Id.

> A claim has facial plausibility when the plaintiff pleads factual content that allows the [C]ourt to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

Id. at 678 (citations omitted).

In this connection, Morris' Complaint "'must contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory.'" Bryson v. Gonzales, 534 F.3d 1282, 1286 (10th Cir. 2008) (quotation and further citation omitted). While "[t]he nature and specificity of the allegations required to state a plausible claim will vary based on context," Kansas Penn

---

documents, which are attached to the defendants' response.

Gaming, LLC v. Collins, 656 F.3d 1210, 1215 (10th Cir. 2011)(citations omitted), neither "'naked assertion[s]' devoid of 'further factual enhancement,'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 557), nor "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory allegations, . . . suffice." Id. (citing Twombly, 550 U.S. at 555). "[T]he Twombly/Iqbal standard recognizes a plaintiff should have at least some relevant information to make the claims plausible on their face." Khalik v. United Air Lines, 671 F.3d 1188, 1193 (10th Cir. 2012). "[I]t demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation," Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 555 (further citation omitted)), and more than "mere 'labels and conclusions,' and 'a formulaic recitation of the elements of a cause of action' . . . ." Kansas Penn Gaming, 656 F.3d at 1214 (quoting Twombly, 550 U.S. at 555).

Morris has sought relief against the defendants in their individual capacities under both state and federal law, and in connection with the latter, the defendants, relying on the affirmative defense of qualified immunity, have contended that they are shielded from liability.

In actions seeking relief under title 42, section 1983 of the United States Code, "[t]he doctrine of qualified immunity protects government officials from liability for civil damages 'unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was "clearly established" at the time of the challenged conduct.'" Wood v. Moss, 134 S. Ct. 2056, 2066-67 (2014)(quoting Ashcroft v. al-Kidd, 131 S. Ct. 2074, 2080 (2011)).

3

Morris' excessive force claim against the three movants is "'governed by the [f]ourth [a]mendment's "objective reasonableness" standard.'"[3] Morris v. Noe, 672 F.3d 1185, 1195 (10th Cir. 2012)(quoting Cavanaugh v. Woods Cross City, 625 F.3d 661, 664 (10th Cir. 2010)). "Under this standard, 'the question is whether the officers' actions are "objectively reasonable" in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation,'" id. (quoting Graham v. Connor, 490 U.S. 386, 297 (1989)), and a fourth amendment excessive force claim exists "'[i]f the plaintiff can prove that the officers used greater force than would have been reasonably necessary to effect a lawful arrest[.]'" Fisher v. City of Las Cruces, 584 F.3d 888, 893–94 (10th Cir. 2009)(quotation omitted).

In determining whether Morris has asserted sufficient facts showing that Lancaster, Shelton and Hicks, who are employed as police officers by the City, violated G Morris' constitutional right to be free from an unreasonable seizure because they used excessive force, the Court must consider and balance three factors:

> (1) the severity of the crime at issue, (2) whether the suspect pose[d] an immediate threat to the safety of the officers or others, and (3) whether he [was] . . . actively resisting arrest or attempting to flee.

Morris, 672 F.3d at 1195 (citing Graham, 490 U.S. at 396).

---

[3]Morris has asserted that his excessive force claims against the three officers arise under the fourth and fourteenth amendments to the United States Constitution. See, e.g., Doc. 1-4 at 10, ¶ 44. Different standards govern, depending on which amendment is applicable. "[B]ecause the [f]ourth [a]mendment protects against 'unreasonable searches and seizures' and pertains to the events leading up to and including an arrest of a citizen previously at liberty," Porro v. Barnes, 624 F.3d 1322, 1326 (10th Cir. 2010), it governs in this case. E.g., Austin v. Hamilton, 945 F.2d 1155, 1160 (10th Cir. 1991) (fourth amendment applies until formal charges are brought or arraignment is held because force used is part of the "seizure"), abrogated on other grounds, Johnson v. Jones, 515 U.S. 304 (1995).

4

As alleged in the Complaint, G Morris was observed by Shelton as he (G Morris) ran naked on Interstate Highway 35 ("I-35"). Shelton drove his vehicle behind G Morris and yelled at him to stop. Shelton eventually exited his vehicle, announced that he was an NPD officer and asked G Morris to sit on the curb. "[G] Morris resisted, yelled, and [made] . . . incoherent statements," Doc. 1-4 at 3, ¶ 15, and then ran across the southbound lanes of I-35 toward the median.

By this time, Lancaster had arrived and he "'deployed his taser[, arguably "to prevent G Morris from jumping into the northbound lanes," id. at 4, ¶ 16 (quotation omitted),] and made contact . . . Once the taser was deployed . . . , [G Morris] . . . fell to the ground and curled up.'" Id. (citation omitted). When asked by Shelton to identify himself, G Morris "'stated, "George, Juanita, Justin" . . . and then started yelling "help me" several times.'" Id. ¶ 17 (quotation omitted).

Lancaster and Shelton "had informed [G] Morris that they were there to assist him[ and] . . . attempted to get [him] . . . on his stomach to place him in hand restraints, but [he] . . . proceeded to resist, and during that time Idlett[, a trooper employed by the Oklahoma Highway Patrol,] arrived on the scene and gave assistance." Id. "'Lancaster announced to . . . Idlett and . . . Shelton that he was going to deploy his taser again,'" id. (quotation omitted), and did so.

Morris has contended that "[G] Morris then stopped, curled up, and stopped resisting . . . ." Id. ¶ 18. By then, Hicks arrived to assist. "All four [defendants] were attempting to restrain [G] Morris, and then Lancaster used 'a dry stun method and placed the taser on [G Morris'] . . . front left shoulder . . . .'" Id. (quotation omitted). "[G] Morris was put onto his stomach, and 'Idlett secured [his] . . . right arm with a handcuff and then

5

... Shelton secured . . .[his] left arm and he was placed into hand restraints.'" Id. (quotation omitted). Idlett then "retrieved leg restraints from his vehicle and placed them on [G] Morris.'" Id. (quotation omitted).

Morris has alleged that after G Morris had been restrained, two individuals–Captain Eric Spor and a fireman, Taylor Hendrix,–"noted that [G] Morris was laying face-down, on the ground, with blood around his mouth and nose area." Id. at 5, ¶ 20. "When . . . medic Valen Little arrived, [G] Morris [had] already ceased breathing and had a faint pulse." Id. Attempts were made to resuscitate G Morris, but he died that same day, allegedly from a "'combination of . . . coronary artery disease, methamphetamine abuse, and exertion associated with the physical activity of the police interaction[, which] resulted in fatal cardiac ischemia . . . .'" Id. ¶ 21.

Taking these allegations as true, as the Court is required to do, the first Graham factor weighs slightly in G Morris' favor since although he was initially being detained for what the defendants have described as "bizarre conduct," Doc. 14 at 8, and "highly erratic behavior," id. at 9, his behavior, as the defendants have admitted, was "not the most serious of criminal violations." Id. at 8.

With respect to the second and third Graham factors, the allegations in the Complaint not only permit the inference that G Morris posed some threat to the safety of the officers, himself and drivers on I-35, but also permit the finding that initially "Morris resisted, yelled, and [made] . . . incoherent statements," Doc. 1-4 at 3, ¶ 15, ran naked across the southbound lanes of I-35 toward the median and even after Lancaster deployed his taser the first time and the officers attempted to get G Morris "on his stomach to place him in hand restraints, . . . [he] . . . proceeded to resist . . . ." Id. at 4, ¶ 17.

6

However, as the allegations further demonstrate, G Morris had "curled up[ ] and stopped resisting . . . ," id. ¶ 18, after the second tasing and before Lancaster "placed the taser on [G Morris'] . . . front left shoulder . . ,'" id., and the officers secured G Morris' hands with handcuffs and his legs with restraints. Accordingly, the third taser firing and the amount of force used by the officers at that point in light of Morris' little, if any, resistance weigh against the defendants.

While at the conclusion of this litigation, the record may well demonstrate otherwise, the Court finds that Morris has sufficiently pleaded at this stage that the amount of force used by Lancaster, Hicks and Shelton was not objectively reasonable in light of the facts and circumstances confronting them.[4]

The second prong of the qualified immunity analysis–"[r]equiring the alleged violation of law to be 'clearly established' 'balances . . . the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably.'" Wood, 134 S. Ct. at 2067 (quoting Pearson v. Callahan, 555 U.S. 223, 231 (2009)). Under extant case law, "[t]he 'dispositive inquiry[ ]' . . . 'is whether it would [have been] clear to a reasonable officer' in the [defendants'] . . . position 'that [their] conduct was unlawful in the situation [they] confronted.'" Id. (quoting Saucier v. Katz, 533 U.S. 194, 202 (2001)).

---

[4] See, e.g., Mick v. Brewer, 76 F.3d 1127, 1136 (10th Cir.1996)(law enforcement official who fails to intervene to prevent another law enforcement official's use of excessive force may be liable under section 1983).

As the Tenth Circuit has noted, "[t]he question of whether a right is clearly established must be answered 'in light of the specific context of the case, not as a broad general proposition,'" Morris, 672 F.3d at 1196 (quoting Saucier, 533 U.S. at 201), and "'[o]rdinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains.'" Id. (quoting Klen v. City of Loveland, 661 F.3d 498, 511 (10th Cir. 2011)).

However, "[b]ecause the existence of excessive force is a fact-specific inquiry, . . . 'there will almost never be a previously published opinion involving exactly the same circumstances.'" Id. (quoting Casey v. City of Federal Heights, 509 F.3d 1278, 1284 (10th Cir. 2007)). Accordingly, the Tenth Circuit has adopted a sliding scale: "'The more obviously egregious the conduct in light of prevailing constitutional principles, the less specificity is required from prior case law to clearly establish the violation.'" Id. (quoting Pierce v. Gilchrist, 359 F.3d 1279, 1298 (10th Cir.2004).

The Court finds that in light of the Graham factors, it was clearly established that at least the third firing of the taser together with the force used to secure G Morris' hands and legs was not justified against an individual who was no longer actively resisting. E.g., Casey, 509 F.3d at 1281-1286. The Court therefore finds, based solely on the allegations in the complaint, that G Morris had the right to be free from such force in this situation. Accordingly, Lancaster, Shelton and Hicks are not entitled at this juncture to the affirmative defense of qualified immunity.

The three individual defendants have also challenged Morris' state law claims asserted against under article 2, section 30 of the Oklahoma Constitution.[5] Morris has argued that because Shelton, Lancaster and Hicks acted unreasonably and with excessive force in violation of section 30, they should be held jointly liable with the City under Bosh v. Cherokee County Building Authority, 305 P.3d 994 (Okla. 2013). See Doc. 1-4 at 3, ¶ 13.

In Bosh, the Oklahoma Supreme Court recognized a private right of action under section 30 against offending law enforcement officials for excessive force. Thus, to the extent, Morris has attempted to hold these three defendants liable under section 30 based upon their alleged use of unreasonable force on December 16, 2012, Lancaster, Shelton and Hicks are not entitled to the relief they have requested.

Accordingly, the Court DENIES the Motion to Dismiss [Doc. 14] filed by Shelton, Lancaster and Hicks on May 27, 2014.

ENTERED this _11th_ day of July, 2014.

LEE R. WEST
UNITED STATES DISTRICT JUDGE

---

[5]Article 2, section 30 of the Oklahoma Constitution reads:

The right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches or seizures shall not be violated; and no warrant shall issue but upon probable cause supported by oath or affirmation, describing as particularly as may be the place to be searched and the person or thing to be seized.