IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JUSTIN MORRIS, as administrator for the Estate of George Morris,<br><br>    Plaintiff,<br><br>v.<br><br>KEITH L. HUMPHREY, *et al.*,<br><br>    Defendants. | Case No. CIV-14-0497-W |

**DEFENDANTS LARRY SHELTON, AARON LANCASTER, AND JONATHAN HICKS' QUALIFIED IMMUNITY MOTION FOR SUMMARY JUDGMENT**

**COMES NOW** Defendants Larry Shelton, Aaron Lancaster, and Jonathan Hicks to move this Court to grant this Qualified Immunity Motion for Summary Judgment. In support of this Motion, the Defendants submit the following Brief.

**BRIEF IN SUPPORT**

## I. INTRODUCTION

This case arises out of the threat Plaintiff's decedent, George Morris (G. Morris), posed to the immediate safety of himself, motorists in the north and south bound lanes of Interstate 35 (I-35), Officers Shelton, Lancaster, and Hicks, and Oklahoma Highway Patrol Trooper Jansen Idlett. On December 16, 2012, at approximately 2:07 a.m., the Norman Police Department (NPD) received a 9-1-1 call regarding naked man standing in the southbound lanes of Interstate 35 near Norris Marine. Officers Shelton, Lancaster, and Hicks responded to the welfare check created by the 9-1-1 call.

Officer Shelton was the first officer to arrive. He found a naked white male, subsequently determined to be G. Morris, jogging southbound on the shoulder of I-35. Officer Shelton contacted G. Morris and attempted to talk with him. G. Morris initially complied. But after yelling and making incoherent statements. G. Morris ran across the south-bound lanes of I-35. By this time, Officer Lancaster had arrived. When G. Morris attempted to cross the concrete barrier that divides the north and south bound lanes of I-35, Officer Lancaster deployed his taser against G. Morris. This prevented G. Morris from crossing the concrete barrier and entering the north-bound lanes of I-35.

Although the taser prevented G. Morris from crossing the concrete barrier, G. Morris actively resisted being handcuffed. To overcome G. Morris' resistance, Officer Lancaster tased G. Morris two (2) additional times. Although G. Morris continued to resist, Officers Lancaster, Shelton, and Hicks and Trooper Idlett were eventually able to overcome G. Morris' resistance. However, the combination of coronary artery disease, methamphetamine abuse, and exertion associated with the physical activity of police interaction caused G. Morris to suffer fatal cardiac ischemia.

## II. LCvR 56.1 STATEMENT

### A. G. Morris actively resisted arrest.

1. On December 16, 2012, NPD was notified by a 9-1-1 call that a male subject was running south bound on Interstate 35 with no clothes on. Officer Shelton was the first officer to arrive. He observed a white male, later identified

as G. Morris, naked and running south on I-35. Petition at pg. 3, ¶ 15; Answer of Larry Shelton, Aaron Lancaster, and Jonathan Hicks [Doc. Entry No. 35] at pg. 3, ¶ 15.

2. Officer Shelton directed G. Morris to stop running. G. Morris initially ignored Officer Shelton but subsequently stopped running. After brief contact with Officer Shelton, G. Morris began yelling and waving his arms. He then ran across the southbound lanes of I-35. Petition at pg. 3-4, ¶ 15; Answer of Larry Shelton, Aaron Lancaster, and Jonathan Hicks at pg. 3, ¶ 15.

3. Officer Lancaster arrived shortly after G. Morris ran across the southbound lanes of I-35. Officers Shelton and Lancaster intended to physically take G. Morris into custody; however, before they could do so, G. Morris attempted to cross the concrete barrier that separates the north and south bound lanes of I-35. To prevent G. Morris from crossing the concrete barrier, Officer Lancaster deployed his taser. This deployment prevented G. Morris from entering the north bound lanes of I-35. *Id.* at pg. 3-4, ¶¶ 15-16; Answer of Larry Shelton, Aaron Lancaster, and Jonathan Hicks at pg. 3, ¶¶ 15-16.

4. After the first taser deployment, G. Morris fell to the ground and curled up. When asked by Officer Shelton to identify himself, G. Morris stated "George Juanita, Justin" … and then yelled "help me" several times. Officers Shelton and Lancaster informed G. Morris that they were there to assist him and attempted to get him on his stomach to put him in handcuffs but G. Morris

resisted. *Id.* at pg. 4, ¶¶ 16-17; Answer of Larry Shelton, Aaron Lancaster, and Jonathan Hicks at pg. 3, ¶¶ 16-17.

5. Trooper Jansen Idlett arrived during this time period. Officer Lancaster announced that he was going to deploy his taser again. Officer Lancaster fired his taser again and although G. Morris curled up and stopped resisting it is not clear whether G. Morris was shocked because one of the barbs was not attached to G. Morris. Petition at pg. 4, ¶¶ 17-18; Answer of Larry Shelton, Aaron Lancaster, and Jonathan Hicks at pg. 3, ¶P 17-18; Exhibit 1 – Affidavit of Aaron Lancaster.

6. Officer Hicks arrived after the second taser deployment. Officer Lancaster directed Officer Hicks to take out his taser and use it if necessary. Officer Shelton and Trooper Idlett resumed their attempt to take G. Morris into custody. However, G. Morris continued to resist. Exhibit 1; Exhibit 2 – Affidavit of Jonathan Hicks; and Exhibit 3 – Affidavit of Larry Shelton. To overcome G. Morris' resistance, Officer Lancaster used his taser in drive-stun mode. Officer Lancaster did a drive-stun on G. Morris' left shoulder. It was not effective. Exhibits 1 and 3.

7. Although G. Morris continued to resist after the third taser deployment, Officers Shelton, Lancaster, and Hicks, and Trooper Idlett were able to handcuff G. Morris and secure his legs. Exhibits 1, 2, and 3.

8. In addition to Exhibits 1, 2, and 3, Officers Shelton, Lancaster, and Hicks also rely on the interviews and video set forth on conventionally filed

Compact Disc [Doc. Entry No. 39]. This evidence further illustrate the threat of injury or death G. Morris presented to himself, Officers Shelton, Lancaster, and Hicks, Trooper Idlett, and motorist on I-35, and that G. Morris actively resisted arrest after the first, second, and third taser deployments. *See* Conventionally filed Compact Disc.

**B.  Medical care was promptly summoned.**

9.  After G. Morris was taken into custody, Officer Hicks contacted dispatch and confirmed that first responders and paramedics had been dispatched to provide medical care to G. Morris.[1] Exhibit 2.

10.  Paramedics arrived shortly thereafter and transported G. Morris to a hospital. *Id. See also* Conventionally filed Compact Disc at Track 1 - Idlett Video.[2]

### III.  STANDARD OF REVIEW

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Federal Rule of Civil Procedure 56(c). To dispute a material fact, a party opposing summary judgment must offer

---

[1] It is believed that the first responders and paramedics were requested by Lt. Justin Wishon. Exhibit 2 – Affidavit of Jonathan Hicks at Exhibit A, pg. 2 ("I asked to confirm that fire and EMSSTAT was coming, because Lt. Wishon had called for them before he even got there.").

[2] Officer Idlett arrives at 22:18. The City's first responders arrive at 28:58. The paramedics arrive in the area at 29:46 – driving northbound on I-35 – and arrive at the scene at 32:19.

more than a mere "scintilla" of evidence; the evidence must be such that "a reasonable jury" could return a verdict for him. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In reviewing the record, all factual inferences must be drawn in favor of the party opposing summary judgment. *Stover v. Martinez,* 382 F.3d 1064, 1070 (10th Cir. 2004).

### IV. ARGUMENT AND AUTHORITY

### PROPOSITION I

**OFFICERS SHELTON, LANCASTER, AND HICKS ARE ENTITLED TO QUALIFIED IMMUNITY.**

**A. The Standard for Qualified Immunity.**

The doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan,* 555 U.S. 223, 231, 129 S.Ct. 808, 815, 172 L.Ed.2d 565 (2009) (internal quotation marks omitted). Qualified immunity balances two important interests - the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably. The protection of qualified immunity applies regardless of whether the government official's error is "a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Butz v. Economou,* 438 U.S. 478, 507,

98 S.Ct. 2894, 2911, 57 L.Ed.2d 895 (1978) (ruling that qualified immunity covers "mere mistakes in judgment, whether the mistake is one of fact or one of law.").

Because qualified immunity is "an immunity from suit rather than a mere defense to liability ... it is effectively lost if a case is erroneously permitted to go to trial." *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985) (emphasis deleted). Indeed, the Supreme Court has made clear that the "driving force" behind creation of the qualified immunity doctrine was a desire to ensure that "'insubstantial claims' against government officials [will] be resolved prior to discovery." *Anderson v. Creighton*, 483 U.S. 635, 640 n.2, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). Accordingly, "[the Supreme Court] repeatedly [has] stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Hunter v. Bryant*, 502 U.S. 224, 227, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991) (per curiam). In *Pearson*, the Supreme Court made clear that courts have discretion to decide "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id.* at 818. Here, the first prong or the qualified immunity analysis resolved Plaintiff's federal claims against Officers Lancaster, Shelton, and Hicks.

**B. Officers Shelton, Lancaster, and Hicks did not violate G. Morris' constitutional rights.**

   **1. Excessive Force**

The current Fourth Amendment standard governing excessive force claims was enunciated by the Supreme Court in *Graham v. Connor,* 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). In *Graham*, the Court stated that the test for whether a police officer's use of force was constitutionally excessive is "whether the officer's actions [were] objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham,* 490 U.S. at 397, 109 S.Ct. at 1872 (quotations omitted). This inquiry, the Court continued, must be undertaken from "the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* at 396, 109 S.Ct. at 1872.

Although the Court stressed that the Fourth Amendment test of reasonableness "is not capable of precise definition or mechanical application," the Court identified three criteria to be used by the courts in undertaking this inquiry: 1) "the severity of the crime at issue," 2) "whether the suspect poses an immediate threat to the safety of the officers," and 3) "whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight." *Id.* After reviewing this criteria, the court in *Williams v. Sandel*, 433 F. App'x 353, 360 (6th Cir. 2011) (unpublished) *cert. denied,* 132 S. Ct. 1558 (U.S. 2012) and *cert. denied,* 132 S. Ct. 1622, 182 L. Ed. 2d 163 (U.S. 2012) concluded that the officers'

use of electronic control devices, batons, and pepper spray to subdue the plaintiff was not objectively unreasonable.

In *Williams*, officers confronted a suspect who was high on ecstasy, nude, and jogging along the interstate at midnight. The suspect refused to be handcuffed, prompting officers to tase him thirty-seven times (and to use batons and pepper spray as well) until he stopped resisting. Regarding the first criteria set forth in *Graham*, the court concluded that "[a]lthough not the most serious of criminal violations, surely Williams's bizarre conduct, jogging naked on the interstate in the earliest hours of the morning, provided several reasons for the officers to stop and detain him." *Id.* at 361.

Regarding the second criteria, the court concluded that the plaintiff's conduct from the beginning of the encounter until he was secured posed an immediate threat of injury or death to himself, the officers, and other motorists by virtue of the circumstances. *Id.* The court noted that the risk of serious bodily injury or death is great when encountering the high-speed traffic present on an interstate and that this risk was further heightened by the darkness and limited visibility. *Id.*

Regarding the third criteria, the court found that although the plaintiff insisted that he was compliant, the evidence showed that he actively resisted the officers' efforts to secure him – i.e., he repeatedly refused to allow himself to be secured by the officers and he attempted to evade the officers by traveling south on the interstate. *Id.* at 362. Applying the criteria set forth in *Graham* to the

instant case leads to one conclusion: the force used by the City's police officers was objectively reasonable.

The Court has already ruled that the first *Graham* factor weighs slightly in favor of G. Morris and that the second and third *Graham* factors weighs in favor of Officers Shelton, Lancaster, and Hicks with regard to the first and second taser deployments. *See* Order [Doc. Entry No. 30] at 6-7. The second and third *Graham* factors also weighs in favor of Officers Shelton, Lancaster, and Hicks with regard to the third taser deployment and the force used to secure G. Morris' hands and legs because the undisputed facts show that G. Morris refused to allow himself to be secured after the first, second, and third taser deployments. In light of these facts, the Court should conclude that each taser deployment and the force used to secure G. Morris' hands and legs were not objectively unreasonable and did not amount to a violation of G. Morris' constitutional rights. Should the Court make such a conclusion, it should grant Officers Shelton, Lancaster, and Hicks qualified immunity.

2.  **Medical Care**

Failure to provide medical care under the Fourteenth Amendment's Due Process Clause affords the same degree of protection afforded to convicted inmates under the Eighth Amendment. *Estate of Hocker ex rel. Hocker v. Walsh*, 22 F.3d 995, 998 (10th Cir. 1994). Deliberate indifference to a prisoner's serious illness or injury states a cause of action under the Eighth Amendment when the indifference is manifested by intentionally denying or delaying access to

medical care or intentionally interfering with the treatment once prescribed. *Estelle v. Gamble*, 429 U.S. 97, 104-05, 50 L. Ed. 2d 251, 97 S. Ct. 285 (1976) (footnote omitted). The constitutional obligation is met by seeing that the arrestee is taken "promptly to a hospital that provide[s] the treatment necessary for his injury." *Revere v. Massachusetts General Hosp.*, 463 U.S. 239, 244, 245, 103 S.Ct. 2979, 77 L.Ed.2d 605 (1983). Here, the constitutional obligation was met.

The undisputed facts in this case show that Officer Hicks confirmed that medical assistance had been requested after G. Morris was taken into custody and that paramedics arrived shortly thereafter and transported G. Morris to Norman Regional Hospital. These undisputed facts show that the constitutional obligation to provide G. Morris with medical care was met. Consequently, Officers Shelton, Lancaster, and Hicks are entitled to qualified immunity on Plaintiff's federal claim for failure to provide medical care.

## PROPOSITION II

**OFFICERS LANCASTER, HICKS, AND SHELTON ARE ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S CLAIM UNDER ARTICLE II, § 30 OF THE OKLAHOMA CONSTITUTION.**

In its Petition, the Estate alleges an excessive force claim under Article II, § 30 of the Oklahoma Constitution. In *Bosh v. Cherokee Cnty. Bldg. Auth.*, 2013 OK 9, ¶ 30, 305 P.3d 994, 1004, *reh'g denied*, the Oklahoma Supreme Court held that Article II, § 30 of the Oklahoma Constitution provides a private cause of

action for excessive force, notwithstanding the limitations of the Oklahoma Governmental Tort Claims Act, 51 O.S. §§ 151 *et seq.*, and that the common law theory of respondeat superior applies to municipal liability under such an action to determine when an employee of a municipality uses excessive force within the scope of employment.

In *Bryson v. Oklahoma Cnty. ex rel. Oklahoma Cnty. Det. Ctr.*, 2011 OK CIV APP 98, ¶ 28, 261 P.3d 627, 638, the court adopted the "reasonableness test" discussed in *Washington v. Barry,* 2002 OK 45, 55 P.3d 1036 and *Graham v. Connor,* 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989) for analyzing excessive force claims under Article II, § 30 of the Oklahoma Constitution. Because *Washington* involved a prisoner and because a prisoner has a significantly greater burden to bear in establishing his right to a cause of action for use of excessive force than does a person who is not incarcerated, 2002 OK 45 at ¶ 10, 55 P.3d at 1039, the reasonableness text discussed in *Graham* should be used when analyzing excessive force claims under Article II, § 30 of the Oklahoma Constitution that do not involve a prisoner.

Assuming without conceding that Officers Shelton, Lancaster, and Hicks can be held liable under *Bosh*, *see* Order [Doc. Entry No. 32] at 5 (observing that Judge Heaton has recognized that liability under *Bosh* is directed to the employer, rather than supervisors), they are entitled to summary judgment on Plaintiff's claim under Article II, § 30 of the Oklahoma Constitution. As noted above, each taser deployment and the force used to take G. Morris into custody

was not objectively unreasonable under *Graham*. *See* PROPOSITION I supra. Consequently, said use was also not objectively unreasonable under Article II, § 30 of the Oklahoma Constitution.

V. CONCLUSION

**WHEREFORE** the above and foregoing, Officers Shelton, Lancaster, and Hicks respectfully request that this Court grant summary judgment in their favor and award them all other relief deemed just and equitable.

Respectfully submitted,

CITY OF NORMAN, OKLAHOMA
JEFF HARLEY BRYANT, CITY ATTORNEY

by: s/ *Rickey J. Knighton II*
Rickey J. Knighton II, OBA No. 17257
Assistant City Attorney
Kristina L. Bell, OBA No. 21597
Assistant City Attorney
P.O. Box 370
201 West Gray
Norman, Oklahoma 73070
Telephone: (405) 217-7700
Facsimile: (405) 366-5425
Email: rick.knighton@normanok.gov
Email: kristina.bell@normanok.gov

Attorneys for Defendant City of Norman

**CERTIFICATE OF SERVICE**

I hereby certify that on August 26, 2014, I electronically transmitted the above and foregoing Qualified Immunity Motion for Summary Judgment to the Clerk of Court using the ECF System for filing and the following registrants: Amber N. Peckio Garrett, D. Mitchell Garrett, and Devan Pederson.

s/ <i>Rickey J. Knighton II</i>

## INDEX OF EXHIBITS

| No. | Description |
| --- | --- |
| 1. | Affidavit of Aaron Lancaster |
| 2. | Affidavit of Jonathan Hicks |
| 3. | Affidavit of Larry Shelton |